In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-02-00019-CV

____________


RICE FOOD MARKET, INC., Appellant


V.


RHONDA HICKS, Appellee






On Appeal from the 234th District Court

Harris County, Texas

Trial Court Cause No. 99-57526





DISSENTING OPINION



Can a business that creates a dangerous condition escape responsibility by
claiming that it did not know about the condition? Because I believe that the answer
to this question should be no, I respectfully dissent. I disagree with the majority
opinion, which states that, "there is no evidence in the record that the sign was a
dangerous condition from the moment it was installed," and, on that basis, further
states that, there is "no evidence that Rice had actual knowledge that the sign on the
kiosk posed an unreasonable risk of harm."

To prevail in a premises liability case, an invitee like Hicks must prove that the
premises occupier or owner had actual or constructive knowledge of a dangerous
condition on the premises. Wal-Mart Stores, Inc. v. Reece, 81 S.W.3d 812, 813 (Tex.
2002). In my opinion, Hicks established with more than a scintilla of evidence that
Rice had actual knowledge of the dangerous condition. 

The Charge

The charge complied with the requirements of Keetch v. Kroger Company by
asking the jury to make a factual determination about whether Rice knew or should
have known about the danger. See Keetch v. Kroger Co., 845 S.W.2d 262, 264-65
(Tex. 1992). The jury charge included an instruction that a fact is established by
circumstantial evidence when it may be fairly and reasonably inferred from the facts
proved and included the following single, broad form question to determine
negligence:

 Did the negligence, if any, of the Defendants named below
proximately cause the occurrence in question? With
respect to the condition of the premises, Defendant was
negligent if - (a) The condition posed an unreasonable risk
of harm, and (b) Defendant knew or reasonably should
have known of the danger, and (c) Defendant failed to
exercise ordinary care to protect Plaintiff from the danger,
by both failing to adequately warn Plaintiff of the condition
and failing to make that condition reasonably safe.


(Emphasis added.)


The jury answered "yes" to this broad-form premises-liability question and thus
made a factual determination that Rice had actual or constructive knowledge of the
dangerous condition. The issue in this case is whether there is sufficient evidence in
the record to uphold the jury's finding that Rice knew or should have known of the
dangerous condition. 

Actual Knowledge

The issue in this case is whether there is more than a scintilla of evidence to
support the jury's "yes" answer that Rice had actual knowledge of the dangerous
condition. Premises liability cases often involve slip-and-fall accidents and manner
of display of goods. I will discuss each in turn. 

A slip-and-fall plaintiff satisfies the knowledge element by establishing that (1)
the defendant placed the substance on the floor, (2) the defendant actually knew that
the substance was on the floor, or (3) it is more likely than not that the condition
existed long enough to give the premises owner a reasonable opportunity to discover
it. Wal-Mart Stores, Inc., 81 S.W.3d at 814. A slip-and-fall plaintiff can satisfy the
knowledge element by establishing that a defendant actually placed the injury-producing substance on the floor. Id. When the plaintiff cannot prove that a
defendant actually caused the dangerous condition or actually knew about the
dangerous condition, the plaintiff can establish a defendant's liability by proving that
the premises owner should have known of the danger through a reasonably careful
routine inspection. Id. 

A plaintiff can also satisfy the knowledge element by establishing that the
manner of the display used by the premises occupier or owner created the dangerous
condition from the inception. Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 296
(Tex. 1983). In Corbin, the plaintiff slipped and fell on a grape that was on the floor
in front of a grape display. The court held that a jury could conclude from the
evidence presented that the manner of displaying grapes--in a slanted bin over a
linoleum tile floor with no protective floor mat--posed an unusually high risk of
injury, and that because the store was responsible for placing a mat in front of the
grape display, the absence of a mat was some evidence that Safeway had knowledge
of the unreasonable risk. Id. at 297; see also CMH Homes, Inc. v. Daenen, 15 S.W.3d
97, 101 (Tex. 2002) ("The [Corbin] display constituted a dangerous condition from
the moment it was used.").

CMH Homes, Inc. reiterated the distinction between conditions that are
dangerous from their inception, such as the Corbin situation, and conditions on
premises that are not dangerous at the inception but become unsafe over time. CMH
Homes, Inc., 15 S.W.3d at 101. Reversing the jury's verdict, the court said, "There
is no evidence that the step and platform on which [the plaintiff] was injured was a
dangerous condition from the inception of its use." Id. 

Did Rice have actual knowledge of the dangerous condition where the
undisputed evidence shows that Rice created the injury-producing condition? 
Assuming for the moment that the evidence shows that the manner of the display of
the sign was dangerous, how can Rice claim to have no actual knowledge of the
dangerous condition when Rice created that condition? Was the sign on the kiosk a
dangerous condition from the inception of its use? 

Whether there is more than a scintilla of evidence to support the jury's finding
of a vital fact is often a close question. See Seideneck v. Cal Bayreuther Assoc., 451
S.W.2d 752, 755 (Tex. 1970). In my opinion, considering the evidence and
inferences in the light most favorable to the jury's finding, more than a scintilla of
evidence supports the conclusion that Rice had actual knowledge that the sign on the
kiosk posed an unreasonable risk of harm from the moment it was installed. 
Additionally, the evidence is not so weak or the verdict so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. 


The Evidence

Rice called no defense witnesses at the jury trial. The evidence is thus largely
undisputed. While Hicks was standing at a kiosk attempting to purchase candy, a
sign fell from the kiosk. The sign struck her on the head and body and injured her. 
Greg Belsheim, a Rice corporate representative, testified that Rice installed the sign,
which was attached with Velcro. An issue at trial was whether the sign was also
attached with screws in addition to the Velcro. Belsheim initially stated that he did
not know whether there were screws on the sign at the time of the incident, but later
testified as follows:

Question: You say you know that it was attached by a screw or more?

Answer: Well.

Question: No, No, Sir. You are under oath. Tell us what you know. Was
it or was it not?


The Court: Overruled.

Answer: No.

Belsheim further admitted that the photos depicting the sign show the mount
for the screws but no screws. He also admitted that the photos showed that the
canvas on the kiosk where the sign was mounted had not been pierced by a screw. 
The sign weighed three and one-half pounds. Belsheim stated that he never checked
the sign personally after it was installed and did not know of anyone who had ever
checked it 

The jury could have determined, from this circumstantial evidence, that the
manner of the display of the sign was dangerous from the inception. One end of the
sign swung down from the kiosk and struck Hicks. Belsheim testified that Velcro is
not permanent and that it does not give away evenly. Regardless of how long the sign
had been in place, the jurors, using their life experiences with Velcro and common
sense understanding of how Velcro works, could have found that attaching a three
and one-half pound sign with Velcro rather than screws was unreasonable and
dangerous. I would defer to the jury's determination of this issue and believe that
more than a scintilla of evidence supports the jury's assessment of the evidence. 

Belsheim further testified that he was not aware of any other kiosks in the store
where Velcro was used in place of screws. As in Corbin, in which the absence of a
mat, combined with the manner of the display, gave the defendant notice of the
dangerous condition, 648 S.W.2d at 297, Belsheim's knowledge that no other signs
were affixed with Velcro alone was further circumstantial evidence that Rice knew
the manner of the display was dangerous. 

Hicks established that Rice created the dangerous condition by affixing the sign
onto the kiosk in the manner that it did. The jury had circumstantial evidence to
determine that the manner of the display was dangerous from the inception. Because
there is more than a scintilla of evidence to uphold the jury's finding of actual
knowledge, I dissent. 



 
 Elsa Alcala


 Justice

 

Panel consists of Justices Hedges, Jennings, and Alcala.


Justice Alcala, dissenting.